1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 KASSAUNDRA LEE SALYARDS, et al.,          CASE NO. CV-F-04-5798 OWW LJO

12              Plaintiffs,              **ORDER ON DEFENDANTS' MOTION TO**
                                         **EXCLUDE CERTAIN EXPERT OPINION**
13      vs.                              (Doc. 59.)

14 METSO MINERALS OY, et al,

15              Defendants.
                                    /
16

17                          **INTRODUCTION**

18        In this wrongful death action, defendants Metso Minerals Oy, Metso Minerals Industries, Inc.,

19 and Metso Minerals (USA), Inc. (collectively "Metso") seek to exclude a certain opinion of the

20 economic damages expert of plaintiffs Jennifer Lee Salyards ("Mrs. Salyards") and her daughter

21 Kassaundra Lee Salyards ("Kassaundra") on grounds the opinion and its basis were not disclosed in the

22 expert's F.R.Civ.P. 26(a)(2)(B) report.  This Court considered Metso's motion to exclude the

23 undisclosed expert opinion on the record and without oral argument or the September 16, 2005 hearing,

24 pursuant to this Court's Local Rule 78-230(h).  For the reasons discussed below, this Court GRANTS

25 Metso's motion to exclude the undisclosed expert opinion.

26                          **BACKGROUND**

27                        **Expert Disclosure**

28        Mrs. Salyards and Kassaundra (collectively the "Salyards") are the surviving wife and daughter

                                         1

of Jason Salyards ("Mr. Salyards") who was killed in June 2003 when he attempted to install a part in a rock crusher.  The Salyards claim that Metso is the manufacturer and United States distributor of the rock crusher, pursue products liability, negligence and breach of warranty claims against Metso, and seek monetary damages.  The district judge issued his October 13, 2004 scheduling order to require the parties' initial expert disclosures no later than June 1, 2005 and supplemental expert disclosures no later than July 1, 2005.  As to expert disclosures, the order provides:

> The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a) regarding their expert designations. . . . [T]he written designation of experts shall be made pursuant to F. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

On June 1, 2005, the Salyards served their disclosure of Marianne Inouye, M.B.A. ("Ms. Inouye"), as their expert on economic damages.  The Salyards also served Ms. Inouye's May 23, 2005 report which notes her assignment "to compute the plaintiffs' past and future loss of support from the decedent's earnings and benefits and the past and future loss of household services."  Ms. Inouye's report includes two scenarios for two opinions of the Salyards' economic damages.  Under Scenario A, Ms. Inouye used a 1999-2002 average of Mr. Salyards' earnings to calculate economic damages of $2,366,077.[1]  Under Scenario B, Ms. Inouye used a 1999-2003 average of Mr. Salyards' earnings to calculate economic damages of $2,507,771.

At her July 27, 2005 deposition, the Salyards' counsel asked Ms. Inouye to look at the May 18, 2005 report of the Salyards' vocational expert Rick Sarkisian, Ph.D. ("Dr. Sarkisian"), who was designated to provide opinion testimony on Mr. Salyards' "pre-incident employability and earning capacity."  In his report, Dr. Sarkisian noted "an average of the earnings for 2000-2002 would yield $80,169.83, but I think the most reasonable approximation of his pre-incident employability and earning capacity would include annualized 2003 data, then a 2000-2003 average or in the alternate, the annualized 2003 data alone."  Ms. Inouye testified that by using Dr. Sarkisian's alternative of the annualized 2003 data alone, the earnings basis is increased so that the economic damages under Scenario

---

[1]     The economic damages calculation includes loss of past support and household services along with the present value of loss of future support, household services and pension benefits.

2

1   B increase by $294,419 from $2,507,771 to $2,802,190.

2          At his August 4, 2005 deposition, Dr. Sarkisian was asked whether Mr. Salyards' past earnings

3   should be evaluated based on his 2003 earnings or averaged earnings including 2003.  Dr. Sarkisian

4   responded that "it would appear most reasonable to use all four years, 2000 to 2003, as the fairest

5   approach."

6                                            **DISCUSSION**

7          Metso contends that Ms. Inouye's testimony as to an increase by $292,419 in the Salyards'

8   alleged economic damages based on Mr. Salyards' 2003 annualized earnings alone should be precluded

9   as opinion undisclosed in her report.  Metso argues that this increased figure "is untimely as it comes

10  almost two months after such disclosure was required" and that "Ms. Inouye's opinions should be

11  limited to those expressed in her written report."  According to Metso, "Ms. Inouye provided an entirely

12  new opinion based upon new facts" and her "original report did not include a scenario C."  The Salyards

13  respond that Ms. Inouye did not offer a significant previously undisclosed opinion in that Metso "had

14  the additional scenarios suggested by Dr. Sarkisian and the opinions needed from Ms. Inouye to perform

15  the computation."

16         F.R.Civ.P. 26(a)(2)(A) requires parties to disclose the identity of each expert witness to testify

17  at trial.  The disclosure "shall with respect to a witness who is retained . . . be accompanied by a written

18  report prepared and signed by the witness."  F.R.Civ.P. 26(a)(2)(B).  The report shall contain, among

19  other things, a "complete statement of all opinions to be expressed and the basis and reasons therefor"

20  and the "data or other information considered by the witness in forming the opinions."  F.R.Civ.P.

21  26(a)(2)(B).

22         "The reason for requiring expert reports is 'the elimination of unfair surprise to the opposing

23  party and the conservation of resources.'"  *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev.

24  1998) (quoting *Redd v. Binder*, 165 F.R.D. 424, 429 (D. N.J. 1996) (citations omitted)).  F.R.Civ.P.

25  26(a)(2) "imposes an additional duty to disclose information regarding expert testimony sufficiently in

26  advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross

27  examination and perhaps arrange for expert testimony from other witnesses."  F.R.Civ.P. 26 Adv.

28  Comm. Notes (1993 Amendments).

1    F.R.Civ.P. 37(c)(1) addresses failure to disclose required information: "A party that without

2  substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure

3  is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed."

4  "Rule 37(c)(1) gives teeth . . . by forbidding the use at trial of any information required to be disclosed

5  by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

6  1101, 1106 (9th Cir 2001).

7    If a party fails to adhere to F.R.Civ.P. 26(b) standards, a district court may exercise its discretion

8  to bar the party from presenting an expert's testimony. *Patel v. Gayes*, 984 F.2d 214, 217 (7th Cir. 1993).

9  The Ninth Circuit Court of Appeals gives "particularly wide latitude to the district court's discretion to

10  issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106. F.R.Civ.P. 16(f) and 37(b)(2)(B)

11  "authorize district courts to prohibit the admission of evidence proffered by the disobedient party."

12  *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822, 116

13  S.Ct. 84 (1995); *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3rd Cir. 1990); *Smith v. Rowe*,

14  761 F.2d 360, 366 (7th Cir. 1985). "The power of the trial court to exclude exhibits and witnesses not

15  disclosed in compliance with discovery and pretrial orders is essential" to judicial management of the

16  case. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897-898 (8th Cir. 1978); *Sylla-*

17  *Sawdon*, 47 F.3d at 284. The Ninth Circuit has upheld a district court ruling to preclude an expert from

18  testifying when the expert was not timely and properly disclosed. *Jenkins v. Whittaker Corp.*, 785 F.2d

19  720, 728 (9th Cir.), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324 (1986).

20    To avoid the sanction of exclusion of an expert's testimony, the party seeking the expert

21  testimony must establish either "substantial justification" for the expert's failure to provide required

22  information or that such failure was "harmless" to the opposing party. *See Palmer v. Rhodes Machinery*,

23  187 F.R.D. 653, 655-656 (N.D. Okla. 1999). "[I]t is the obligation of the party facing sanctions for

24  belated disclosure to show that its failure to comply with [F.R.Civ.P. 26] was either justified or harmless

25  . . ." *Wilson v. Bradless of New Englanc, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). "Implicit in Rule 37(c)(1)

26  is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107. In

27  considering to impose a sanction to exclude an expert witness testimony, courts consider:

28    1.    Explanation, if any, for the party's failure to comply with disclosure requirements;

4

1      2.      Prejudice to the opposing party in allowing the witness to testify;

2      3.      Possibility of curing such prejudice by granting a continuance; and

3      4.      Importance of the witness' testimony.

4   *Barrett v. Atlantic Richfield, Co.*, 95 F.3d 375, 381 (5th Cir. 1996); *Sierra Club, Lone Star Chapter v.*

5   *Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir.), *cert. denied*, 519 U.S. 811, 117 S.Ct. 57 (1996).

6           In her May 23, 2005 report, Ms. Inouye explains that she calculated Mr. Salyards' earning

7   capacity under Scenario A utilizing a $80,108 annual earnings basis in 2003 dollars "based on an

8   indexed average of his annualized earnings from 1999 to 2002" for economic damages totaling

9   $2,366,077 and under Scenario B utilizing a $86,782 annual earnings basis in 2003 dollars "based on

10  an indexed average of his annualized earnings from 1999 to 2003" for economic damages totaling

11  $2,507,771. At her deposition, Ms. Inouye testified that by using Dr. Sarkisian's alternative of the

12  annualized 2003 earnings alone, the earnings basis increased so that the economic damages under

13  Scenario B increase by $294,419 from $2,507,771 to $2,802,190.

14          During her deposition, Ms. Inouye reviewed Dr. Sarkisian's report at the request of the Salyards'

15  attorney and revised the factors and calculations for her Scenario B or testified as to a third, new scenario

16  not included in her report. Dr. Sarkisian's May 18, 2003 report with his alternative of annualized 2003

17  earnings alone was available prior to Ms. Inouye's May 23,2005 report and nearly two weeks prior to

18  initial expert disclosure. As such, Ms. Inouye could have reviewed Dr. Sarkisian's report (if made

19  available to her) and adjusted her Scenario B factors and calculations accordingly or included a third,

20  new scenario. The Salyards acknowledge that at her deposition, Ms. Inouye was first "made aware of

21  two additional scenarios included as possibilities by Dr. Sarkisian." Since Ms. Inouye quickly made the

22  adjustments during her deposition, nothing suggests she could not have done so prior to the June 1, 2005

23  expert disclosure let alone the July 1, 2005 supplemental expert disclosure.

24          Under F.R.Civ.P. 26(a)(2)(B), Ms. Inouye's report required her "complete statement of all

25  opinions to be expressed and the basis and reasons therfor." Ms. Inouye's revised Scenario B or third,

26  new scenario fails to comply with F.R.Civ.P. 26(a)(2)(B). The scheduling order warned the Salyards

27  that failure to include information required by F.R.Civ.P. 26(a)(2)(B) "may result in the Court excluding

28  the testimony or other evidence offered through such experts that are not disclosed pursuant to this

5

1   order." The Salyards fail to justify Ms. Inouye's revised Scenario B or third, new scenario given that

2   she had adequate time to include such opinion in her initial or a supplemental report. The Salyards offer

3   no meaningful explanation of exclusion of Ms. Inouye's revised Scenario B or third, new scenario in her

4   report or failure to provide her Dr. Sarkisian's final report until her deposition. Moreover, Dr. Sarkisian

5   questioned the appropriateness of reliance on Mr. Salyards's 2003 annualized earnings alone in that the

6   "fairest approach" is to use Mr. Salyards' earnings during 2000-2003.

7                           **CONCLUSION AND ORDER**

8           For the reasons discussed above, this Court GRANTS Metso's motion to exclude Ms. Inouye's

9   testimony and opinion based on Mr. Salyards' 2003 annualized earning alone and to limit Ms. Inouye's

10  testimony and opinion to matters included in her May 23, 2005 report.

11          IT IS SO ORDERED.

12  **Dated:   September 15, 2005**                    **/s/ Lawrence J. O'Neill**
    66h44d                                          UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28